UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEITH IVAN THOMPSON<br>5917 14th Street, N.W., Apt.#104<br>Washington, D.C. 20011<br><br>PLAINTIFF,<br><br>v.<br><br><br>JEFFERSON B. SESSIONS, III<br>Attorney General<br>United States Department of Justice<br>950 Constitution Avenue, N.W.<br>Washington, D.C. 20001<br><br><br>DEFENDANT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. _____

## COMPLAINT WITH JURY DEMAND

**COMES NOW** the Plaintiff, Keith Ivan Thompson, for his cause of action and states as follows:

## INTRODUCTION

1. This is an action being brought by Plaintiff, a 58-year-old African-American male, who

   alleges that he was discriminated against because of his age and sex in violation of 42

   U.S.C.§ 2000e, as amended, when he was denied a promotion to the position of Case

   Management Specialist (CMS) in the Educational Opportunities Section (EOS) of the

   Civil Rights Division (CRD), and the job was given to a female, substantially younger

   than Plaintiff, with substantially lesser qualifications for the job than Plaintiff.  Plaintiff

   also alleges that he was retaliated against after he provided the Defendant's EEO office

information pertaining to a co-worker's employment discrimination suit against the same supervisors who denied him the CMS promotion in violation of 42 U.S.C.§ 2000e, as amended.  Plaintiff seeks damages for lost wages, benefits and bonuses, pain and suffering, damage to his career, punitive damages, as well as attorney's fees.

## JURISDICTION AND VENUE

2.  Jurisdiction is proper under 28 U.S.C. §1331 as the matter involves a Federal Question, and under 28 U.S.C. §1343 as the matter involves a civil rights statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e, as amended.

3.  The unlawful employment practices described herein were committed within the District of Columbia. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. §1391(b).

4.  Plaintiff has exhausted his administrative remedies, pursuant to 29 CFR §1614 et. seq. The U.S. Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ) issued an Order Entering Dismissal and Returning for Final Agency Action, which the U.S. Department of Justice (DOJ) received on April 6, 2018. The DOJ declined to act on the AJ's Order and 40 days have elapsed since DOJ received the AJ's Order. Therefore, Plaintiff has exhausted his administrative remedies and brings this suit in a timely manner.

## PARTIES

5.  Plaintiff is a citizen of the United States and, at all times relevant to this Complaint, has been an employee of DOJ.

6.  Defendant, DOJ, is a federal agency within the Executive Branch of the United States Government and has, at all times relevant to this Complaint, been the employer of Plaintiff.

## PROCEDURAL BACKGROUND

7. Plaintiff learned that he had been bypassed for promotion to the CMS position on August 9, 2012. Plaintiff subsequently filed a formal complaint with DOJ Justice Management Division, Equal Employment Opportunity Staff (DOJ EEO), on October 31, 2012. After an investigation by DOJ EEO, Plaintiff filed a request for a hearing with the EEOC on May 10, 2013. The EEOC assigned an AJ to Plaintiff's case in October 2014. DOJ filed a motion for summary judgment on November 24, 2014. On December 16, 2014, the AJ issued an Order holding the case in abeyance for medically related reasons after Plaintiff, who was acting *pro se*, requested additional time to obtain an attorney to respond to DOJ's motion for summary judgment. Plaintiff subsequently obtained an attorney and responded to DOJ's motion for summary judgment, and later filed a motion for summary judgment on November 6, 2015. The AJ issued an Order Entering Dismissal and Returning for Final Agency Action on April 6, 2018. The DOJ received the AJ's Order of Dismissal on April 6, 2018 but declined to take any further action on it within 40 days of its receipt as required by 29 CFR §1614. 109(h). Thus, Plaintiff has, therefore, exhausted his administrative remedies, pursuant to 29 C.F.R. §1614 et. seq., and is hereby filing this suit in a timely manner.

## FACTS

8. Plaintiff is a 58-year old African-American male who works as a Legal Technician in the Educational Opportunities Section (EOS) of the Civil Rights Division (CRD) in DOJ.

9. Plaintiff is presently a GS-8/9.  He was a GS-8/7 in October 2012 when he learned that he had been bypassed for the CMS position.

10. Plaintiff is a college graduate, having graduated from the University of the District of Columbia in 1986. He also received an Associate Degree in Paralegalism in 1984 from the same school.

11. Prior to commencing work at DOJ, Plaintiff worked for over 10 years as a paralegal and records supervisor, managing records and files by computerized central file systems, for several law firms and private companies.

12. Plaintiff has held the position of Legal Technician in the EOS since October 6, 2002.

13. The CMS position, for which Plaintiff applied, has the responsibility of, *inter alia*, managing all of the EOS's citizen mail and litigation records by using the Correspondence Tracking System (CTS) and the Interactive Case Management (ICM) computer systems, and drafting monthly congressional reports for management.

14. As a Legal Technician, Plaintiff's job encompasses, among other things, in-taking, managing, distributing, and closing EOS records and files with the assistance of the Correspondence Tracking System (CTS) and the Interactive Case Management (ICM) computer systems. The Legal Technician also assists the CMS on a regular basis in managing the EOS citizen mail and litigation records and drafting monthly congressional reports for management.

15. The Legal Technician not only assists the CMS on a routine basis, but also stands in the position of the CMS when the CMS is on leave or absent from the job. Thus, the Legal Technician and CMS positions overlap in job responsibility.

16. During the time Plaintiff has worked as a Legal Technician, he has supervised and mentored high school and college student interns, and written work performance evaluations and recommendations for them after their departure.

17. Gloria Schultz held the CMS job from 2002 until she retired in September 2011.

18. During the time Gloria Schultz held the CMS job, Plaintiff performed the CMS job on numerous occasions when she was on leave and whenever she needed him to do so, especially during monthly congressional reporting time. Plaintiff carried out these responsibilities from 2002 until the time Ms. Schultz retired in September 2011.

19. From the time Plaintiff began working in EOS in 2002 until 2014, the work performance evaluation rating system for the Legal Technician job from lowest to highest was: Unacceptable, Minimally Satisfactory, Successful, Excellent and Outstanding.

20. From the time Plaintiff started working as an employee in the EOS in 2002, he always received an overall "Excellent" or "Outstanding" work performance evaluation until 2012.

21. Between 2008 and 2011, Plaintiff received an overall rating of: "Excellent" for the rating period April 2008 to March 2009; "Excellent" for the rating period April 2009 to March 2010; and "Excellent" for the rating period April 2010 to March 2011.

22. Plaintiff received an "Excellent" in the "Communication Skills" job element of his work performance ratings in March 2009, March 2010, and March 2011.

23. Since at least 2008, Plaintiff's first-level supervisor was and continues to be Michelle Foushee-McAdoo, who is female, and whose job title is Supervisory Paralegal.

24. Since 2009, Plaintiff's second-level supervisor was and continues to be Franz Marshall, who is male, and whose job title is Deputy Chief.

25. Plaintiff's two immediate supervisors, Michelle Foushee-McAdoo, Supervisory Paralegal, and Franz Marshall, Deputy Chief, signed off on Plaintiff's overall work performance ratings that he received between 2009 and 2011.

26. In the EOS, the Section Chief is the highest level of management and is assisted by Deputy Chiefs, who are second-tier managers, and Special Litigation Counsel, who constitute the third-tier of management.

27. Anurima Bhargava, who is female, was hired as the Section Chief of EOS in November 2010.

28. Anurima Bhargava was 37 years old when she was hired as EOS Section Chief.

29. Prior to Anurima Bhargava's arrival, two other Section Chiefs: Jeremiah Glassman and Amy Berman, respectively, had supervised Plaintiff.

30. Shortly after Anurima Bhargava became Section Chief, she either hired or promoted three female Deputy Chiefs, and no male Deputy Chiefs; and two female Special Litigation Counsel and no male Special Litigation Counsel.

31. After Anurima Bhargava became Section Chief, she either hired or promoted the following individuals, by gender, into management: Emily McCarthy, female, on January 13, 2011; Kathy Devine, female, on February 22, 2011; Whitney Pellegrino, female, on September 24, 2011; Shaheena Simons, female, on October 8, 2011; and Renee Wohlenhaus, female, on January 13, 2013.  All were hired at or promoted to the GS-15 level.

32. Whitney Pellegrino was 35 years old at the time Anurima Bhargava promoted her to Special Litigation Counsel in the EOS.

33. As of January 8, 2012, the EOS management team consisted of the following persons, by gender: Section Chief, Anurima Bhargava, female; Deputy Chief, Franz Marshall, male; Deputy Chief, Shahenna Simons, female; Deputy Chief, Emily McCarthy, female; Special

Litigation Counsel, Kathy Devine, female; and Special Litigation Counsel, Whitney Pellegrino, female.

34. The lone male manager, Franz Marshall, had continuously worked in the EOS since 1970.

35. As of January 8, 2012, the EOS paralegal team consisted of the following persons, by gender: Brenda Lee Ables, female; Rafael Hernandez, male; Dinesha Rogers, female; Gabriel Gonzalez, male; and Rosalyn Smith, female.

36. As of January 8, 2012, the EOS secretarial staff consisted of the following persons, by gender: Cecelia Anderson, female, Gloria Garrett, female; Jacqueline Hopkins, female; and Adrian Reames, female.

37. As of January 8, 2012, the EOS management and support staff was all-female except for Deputy Chief Franz Marshall, and paralegals Gabriel Gonzalez and Rafael Hernandez.

38. Gloria Schultz, who served as the CMS for the EOS, retired in or around September 2011 and Plaintiff began performing the CMS job in October 2011; and from October 2011 to August 2012, he performed the CMS job alone in addition to his Legal Technician duties.

39. In or around October 2011 when Plaintiff took on the CMS duties, as well as performed his Legal Technician duties, Whitney Pellegrino, who was recently promoted to Special Litigation Counsel on September 24, 2011, implemented new Interactive Case Management (ICM) procedures that required that Plaintiff perform additional work as part of his Legal Technician's duties.

40. The new procedures tripled Plaintiff's workload because it required that he put more data into the ICM. He had to scan and type information into the ICM twice and put data on the S-Drive as well. Additionally, the work was a lot more physical in that he had to move

considerably more records boxes alone. Plaintiff asked EOS management for assistance on several occasions, but EOS management never provided any reliable help.

41. The EOS had a one-day Section retreat in January 2012; and throughout the day since other co-workers made recommendations as to how to make the EOS a better Section, Plaintiff stated that he was overworked due to the new job responsibilities that had been assigned to him and that he needed some assistance because he was working alone.

42. Between January 2012 and March 2012, Franz Marshall went by Plaintiff's cubicle and told him that EOS management, Anurima Bhargava and Whitney Pellegrino, thought that he was too old for the CMS job.

43. In March 2012, Plaintiff answered interrogatories in a DOJ EEO case that another EOS staff member, Holland Rainey, who was a paralegal, had brought against EOS management, including Michelle Foushee-McAdoo, Supervisory Paralegal, and Franz Marshall, Deputy Chief.

44. When Plaintiff received a copy of the witness interrogatory packet in the Holland Rainey case around March 2012, the packet included an overview of the complainant (Ms. Rainey), the substance of the case, other names of witnesses to be questioned, an oath to tell the truth, a duty to complete the packet within a certain period of time or be subject to penalty of termination, and the interrogatories. Aside from himself, the other named witnesses Plaintiff saw on the witness interrogatory packet who were asked to respond to the interrogatories were Franz Marshall, Michelle Foushee-McAdoo, and Cecelia Anderson.

45. Anurima Bhargava, Section Chief; Franz Marshall, Deputy Chief; and Michelle Foushee-McAdoo, Supervisory Paralegal, were all named defendants in the Holland Rainey EEO suit, and responded to the DOJ EEO office's interrogatories regarding the suit.

8

46. Whitney Pellegrino, who was promoted to Special Litigation Counsel on September 24, 2011, was also aware of the Holland Rainey suit around the time Plaintiff responded to the DOJ EEO interrogatories, even though she was only a staff attorney and not a manager at that time.

47. In or around March 2012, the EOS initiated the process of filling the CMS vacancy by having Michelle Foushee-McAdoo, Supervisory Paralegal, contact the DOJ HR office and send the DOJ HR office a description of the job that needed to be filled.

48. The DOJ HR subsequently sent the EOS a job announcement setting forth the job criteria that applicants needed to meet in order to qualify for the CMS job.

49. The job announcement for the CMS job at the GS-9 level required, among other things, that the applicant have one year of "specialized experience," to include coordinating intake of and responses to complaints investigated by the EOS; preparing and generating various reports as requested by management; ensuring accuracy and validity of data entered into the Interactive Case Management (ICM) and/or Correspondence Tracking System (CTS); recommending modifications to improve the tracking systems; and providing assistance to other staff members in the researching and evaluation of information in the case management/report system.  The job announcement also sought experience with the relevant civil rights statutes within the core competencies of the EOS. Finally, the job announcement also placed emphasis on formal education by seeking an applicant with a master's or equivalent graduate degree, or two full years of progressively higher-level graduate education leading to advance degrees.

50. After the CMS job was posted, Plaintiff applied for the position on April 23, 2012, by sending a completed application, resume, and a copy of his most recent work performance evaluation (April 2010 - March 2011) to the DOJ HR department.

51. Adrian Reames, the person who ultimately obtained the CMS job, applied for the CMS position on April 24, 2012 at 4:09 p.m., the last day to apply, by sending an application, resume, and a copy of her most recent work performance evaluation (April 2010 - March 2011) to the DOJ HR department.

52. Sometime in either March 2012 or April 2012, during a meeting involving several Civil Rights Division IT staff, Whitney Pellegrino, Adrian Reames (an office secretary), and Plaintiff, Ms. Pellegrino openly asked Adrian Reames to apply for the CMS job.

53. At a one-on-one meeting in either March 2012 or April 2012, Whitney Pellegrino asked Plaintiff if he had the stamina to be productive enough to do the CMS job. Plaintiff interpreted the comment to mean that she thought he was too old for the job since she made the comment after Franz Marshall had told Plaintiff that the EOS managers thought Plaintiff was too old for the CMS job.

54. After the job announcement deadline, DOJ HR qualified five individuals for the CMS job, and Plaintiff was the only male.

55. Of the applicants who qualified to be interviewed for the CMS job, only Adrian Reames and Plaintiff worked in the EOS Section.

56. EOS Section Chief, Anurima Bhargava, appointed the promotion selection panel to interview applicants for the CMS job.

57. Anurima Bhargava appointed Whitney Pellegrino, female; Franz Marshall, male; and Michelle Foushee-McAdoo, female, to serve on the promotion selection panel.

58. Anurima Bhargava did not give the EOS promotion selection panel any instructions or guidelines as to how to conduct the applicant interviews for the CMS job or what to ask in the interview.

59. Cecelia Anderson, the EOS Supervisory Secretary, who is female, coordinated the scheduling for the CMS job interviews, and set May 30 and 31, 2012, as the dates for interviewing applicants for the CMS job.

60. On May 30, 2012, Cecelia Anderson called Plaintiff and told Plaintiff that she had scheduled him to interview for the CMS job that same day, but Plaintiff told Cecelia Anderson that he needed sufficient time to prepare for the interview and that he preferred to interview the next day, May 31, 2012, since he had just returned to the office that day from a long weekend and had a large pile of work on his desk with imminent project deadlines.

61. After talking to Plaintiff about interviewing on May 30, 2012, Cecelia Anderson wrote Anurima Bhargava an email stating that "Keith may want me to reschedule for tomorrow," which was May 31, 2012.

62. Plaintiff was subsequently instructed by Anurima Bhargava to interview on May 30, 2012; and, since Plaintiff had to meet several project deadlines before the interview, he did not have adequate time to prepare.

63. Although EOS management has claimed that Plaintiff told Cecelia Anderson that he wanted to interview on May 30, 2012, Plaintiff never told Cecilia Anderson that he wanted to interview on May 30, 2012 instead of May 31, 2012.

64. Adrian Reames, who is female, and who ultimately got the CMS job, was given "a day and a half or a couple" of days' notice to prepare for her CMS interview.

65. Kathy Byars, who is female, was given several days' notice before she sat for the CMS panel interview.

66. Plaintiff was the only male to be interviewed for the CMS job, but was not given an additional day or more to prepare for the CMS promotion interview.

67. On May 30, 2012, when Plaintiff interviewed for the CMS job, all seven of the top managers in the EOS were women except Franz Marshall who became a Deputy Chief before Anurima Bhargava arrived. These management positions included the Section Chief, four Deputy Chiefs, and two Special Litigation Counsel.

68. Franz Marshall, Whitney Pellegrino, and Michelle Foushee-McAdoo had all taken DOJ EEO training on how to interview applicants for jobs prior to interviewing Plaintiff and the other applicants for the CMS job in May 2012.

69. Prior to the CMS job applicant interviews in May 2012, all EOS management personnel had been trained in DOJ personnel guidelines, including the Department Merit Promotion Guidelines (MPG), and Merit Promotion Plan for the Offices, Boards and Divisions (MPP). EOS managers were expected to follow these personnel guidelines when selecting employees for promotion.

70. The Department Merit Promotion Guidelines (MPG) require that promotions be based on merit and job-related criteria. The MPG guidelines also require that when making selections for promotion to competitive jobs, such as the CMS, the review panel must give due weight to job-related performance appraisals; job-related incentive awards; job-related experience; job-related education; and job-related training for self-development.

71. DOJ's Merit Promotion Plan for the Offices, Boards and Divisions (MPP) require that applicant review panels consider several factors, such as the applicants' job-related

experience, training, education, and performance evaluations when evaluating applicants for promotion.

72. Each EOS promotion selection panelist had a copy of the CMS job announcement, as well as each applicant's resume and most recent work performance evaluation (April 2010 to March 2011) when they interviewed the applicants for the CMS job in May 2012.

73. Thus, each EOS promotion selection panelist had a copy of Plaintiff's (April 2010 to March 2011) work performance evaluation, which had an overall rating of "Excellent," while working as a Legal Technician when they interviewed applicants for the CMS job in May 2012.

74. Each EOS promotion selection panelist also had a copy of Adrian Reames's (April 2010 to March 2011) work performance evaluation, which showed that she had secretarial job responsibilities when they interviewed applicants for the CMS job in May 2012.

75. Plaintiff's resume, which was submitted to the promotion selection panel, showed his considerable job-related experience, training, and formal education, which included both an associate degree and a college degree.

76. By contrast, Adrian Reames's resume, which was submitted to the promotion selection panel, showed her lack of job-related experience, training, and formal education for the CMS job.

77. Plaintiff's resume, which each promotion selection panelist had at the CMS interview, showed that Plaintiff had held the EOS Legal Technician's position since 2002, that he had assisted the CMS daily, that he had stepped in to fill the CMS position when she was away, and that he had worked as the CMS along with his Legal Technician's job from October 2011 up until the time of the CMS job interview on May 30, 2012.

78. At the time Plaintiff applied for the CMS job, his resume showed that he had taken computer training that was directly related to the Legal Technician and CMS jobs. The training consisted of, but was not limited to, the following: Internet Explorer, CRT Intranet, ICM, Orcale CTS, Pacer, and LEXIS/NEXIS (Internet).

79. At the time when Plaintiff applied for the CMS job in April 2012, his resume showed that he had taken numerous non-computer training courses that were job-related.

80. At the time when Plaintiff applied for the CMS job, his resume showed that he had received two work incentive awards (in 2003 and 2008) from EOS Section Chief's Amy Berman and Jeremiah Glassman, respectively, for his outstanding work performance.

81. At the May 30, 2012 interview, Whitney Pellegrino, Special Litigation Counsel, made another comment about Plaintiff being too old to handle the CMS job when she asked Plaintiff if he had the initiative and stamina to make and monitor the ICM changes, and she rose in her seat and raised her voice when she made the comment.

82. Plaintiff was the only male to be interviewed for the CMS job and received the lowest overall rating by the EOS promotion selection panel in comparison to the other three applicants, despite his considerable experience as the EOS Legal Technician and surrogate CMS, and even though two of the applicants were not even EOS employees.

83. The EOS promotion selection panel members: Whitney Pellegrino, Franz Marshall, and Michelle Foushee-McAdoo all cited Plaintiff's poor performance in the interview as the principal reason for selecting Adrian Reames instead of Plaintiff for the CMS job.

84. Although members of the EOS promotion selection panel had possession of a copy of Plaintiff's resume and (April 2010 to March 2011) work performance evaluation, they did not use them when they evaluated Plaintiff's qualifications for the CMS job in May 2012.

85. Thus, the EOS review panel did not consider Plaintiff's job-related experience, training, education and work performance evaluation as required by the DOJ MPG and MPP when it evaluated applicants for the CMS job in May 2012.

86. An agency's deviation from its own standard selection procedures in promotion, such as failing to consider Plaintiff's job-related experience, training, education and performance evaluation when evaluating applicants for the CMS job, can be sufficient to raise an inference of discrimination at the motion-to-dismiss stage of an employment discrimination action under Title VII of the Civil Rights Act of 1964.  *Jones v. Ottenberg's Bakers, Inc*., 999 F. Supp.2d 185 (D.D.C. 2013).

87. The EOS promotion selection panel sent its recommendation to Section Chief Anurima Bhargava in June 2012.

88. On June 29, 2012, EOS management gave Plaintiff an overall "Successful" work performance evaluation for the work period from April 2011 to March 2012; and a "MS" for "Minimally Satisfactory" for the "Communications Skills" job element of the performance evaluation.

89. Anurima Bhargava, Section Chief; Whitney Pellegrino, Special Litigation Counsel; Franz Marshall, Deputy Chief; and Michelle Foushee-McAdoo, Supervisory Paralegal, provided input into Plaintiff's June 29, 2012, work performance evaluation.

90. Although Plaintiff had worked in the EOS as a Legal Technician since 2002, and although he had been supervised by two other Section Chiefs, respectively, between 2002 and 2011, he had never received an overall work performance evaluation as low as "Successful" until 2012 after Anurima Bhargava became Section Chief and after Whitney Pellegrino became a Special Litigation Counsel. Prior to the 2012 overall performance rating,

Plaintiff had always received an "Excellent" or "Outstanding" overall performance evaluation.

91. Despite having worked in the EOS as a Legal Technician between 2002 and 2012, Plaintiff had never received a "MS" for "Minimally Satisfactory" for the "Communications Skills" job element of the performance evaluation.

92. Despite having worked in the EOS as a Legal Technician between 2002 and 2012, none of Plaintiff's work performance evaluations showed that he ever had a problem with "communication," "time management," and/or "interpersonal skills" prior to the 2012 work performance evaluation.

93. Because Plaintiff thought the overall 2012 work performance evaluation, and especially the part related to the "Communications Skills" job element, was unfair, Plaintiff did not sign the work performance evaluation.

94. Plaintiff did not sign the 2012 performance evaluation because he thought that if he had a "Minimally Satisfactory" in any critical element of his work performance evaluation, he would be unable to obtain the promotion to the CMS job.

95. After reviewing the 2012 work performance evaluation, in early July 2012, Plaintiff met with and asked Franz Marshall, Deputy Chief, to change the "Communication Skills" section of the evaluation; and after a discussion, Franz Marshall said that Plaintiff had valid points. Plaintiff left the meeting with the impression that Franz Marshall was committed to changing some of the language in the work performance evaluation if Plaintiff presented him with another version.

96. Plaintiff, therefore, drafted alternative proposed language to include in the 2012 work performance evaluation and presented it to Franz Marshall a couple of days later.

97. However, when Plaintiff submitted the proposed changes in the language of the work performance evaluation to Franz Marshall on July 10, 2012, Franz Marshall refused to accept the changes.

98. Since Franz Marshall refused to accept Plaintiff's proposed language changes to the 2012 work performance evaluation, Plaintiff grieved the performance evaluation in July 2012 with Local 3719, AFSCME, Council 26.

99. On August 8, 2012, Jennell Wilson, who represented Local 3719, scheduled a meeting involving her, the Civil Rights Division Human Resource Officer, Melissa Contess, Michelle Foushee-McAdoo, EOS Supervisory Paralegal, and Plaintiff for the purpose of discussing his grievance pertaining to the 2012 performance evaluation; and when they arrived for the meeting, Franz Marshall, who had not been invited to the meeting, was sitting in the room, although EOS was already represented by Michelle Foushee-McAdoo.

100. Since Franz Marshall had not been invited to the meeting, Jennell Wilson asked Mr. Marshall to leave the room.

101. Franz Marshall, at first, refused to leave; but after Jennell Wilson told him that she would not start the meeting until he left, he got up and walked to the door. While standing in the doorway, Franz Marshall, who stands approximately six feet tall and weighs well over 250 lbs, said "any decisions reached at this meeting must be approved by management before it becomes final!"

102. Anurima Bhargava, EOS Section Chief, and Franz Marshall's direct supervisor, had the final decision as to whether to change Plaintiff's 2012 work performance evaluation, and she decided not to change the evaluation that EOS management had given to Plaintiff.

103. Anurima Bhargava, EOS Section Chief, also had the final decision on EOS staff hires and promotions. She determined not to promote Plaintiff to the CMS job.

104. On August 9, 2012, Michelle Foushee-McAdoo informed Plaintiff that he had not been selected for the (GS-9) CMS job.

105. Michelle Foushee-McAdoo told Plaintiff that Adrian Reames, a female and younger person, who was an office secretary, had been promoted to the (GS-9) CMS job.

106. As a result of obtaining the CMS job, Adrian Reames was promoted from a GS-7 to GS-9.

107. Anurima Bhargava, EOS Section Chief, made the decision to promote Adrian Reames to the CMS job after receiving the recommendation of the EOS promotion selection panel, which she had personally selected.

108. Anurima Bhargava, EOS Section Chief, could have asked the EOS promotion selection panel to reconsider its recommendation, but she did not do so, although Plaintiff had been performing the CMS job in addition to his Legal Technician job from October 2011 to August 2012—nearly a year.

109. When Anurima Bhargava, EOS Section Chief, made her decision to promote Adrian Reames instead of Plaintiff to the CMS job, she did not consider the fact that while performing the Legal Technician's job, Plaintiff had, since 2002, stepped in to perform the CMS job in an excellent manner on numerous occasions in the CMS's absence,

110. When Anurima Bhargava, EOS Section Chief, reached her decision to promote Adrian Reames instead of Plaintiff to the CMS job, she did not consider, or review Plaintiff's previous performance evaluation, job-related experience, training, and education as required by the DOJ MPG and MPP.

111. Anurima Bhargava, EOS Section Chief, did not follow the DOJ MPG and MPP when she made the decision to promote Adrian Reames instead of Plaintiff because these guidelines call for managers to consider experience, training, education, and past work performance when considering applicants for promotion.

112. An agency's deviation from its own standard selection procedures in promotion, such as failing to consider Plaintiff's job-related experience, training, education and performance evaluation when evaluating applicants for the CMS job, can be sufficient to raise an inference of discrimination at the motion-to-dismiss stage of an employment discrimination action under Title VII of the Civil Rights Act of 1964. *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp.2d 185 (D.D.C. 2013).

113. Based on the CMS job announcement, DOJ's MPG and MPP guidelines, and Plaintiff's and Adrian Reames's resumes and recent work performance evaluations, Plaintiff's qualifications for the CMS job were demonstrably superior to those of Adrian Reames at the time Adrian Reames was promoted to the CMS job in August 2012.

114. Had the EOS promotion selection panel followed DOJ's MPG and MPP guidelines, rather than relying solely on their personal, subjective evaluations, Plaintiff would have been promoted to the CMS job rather than Adrian Reames in August 2012.

115. Adrian Reames did not have comparable job-related experience, education, training, or work achievement awards as compared to Plaintiff when she acquired the CMS job.

116. Adrian Reames was hired in September 2007 by Cecelia Anderson, and Michelle Foushee-McAdoo, who supervised, mentored, and evaluated her work performance after her hire.

117. Prior to getting the promotion to CMS in August 2012, Adrian Reames had held a secretary's job in the EOS for only five years; whereas, Plaintiff had worked as a Legal Technician in the EOS for 10 years.

118. As an EOS secretary, Adrian Reames's job did not require that she step in to perform any of the CMS duties when the CMS was not present. Thus, she never stood in the place of the CMS to perform any of the CMS job responsibilities prior to getting the CMS job in August 2012.

119. By contrast, between October 2002 and October 2011, Plaintiff had stepped in on numerous occasions to perform the CMS duties in an excellent manner when the CMS was not present.

120. As an EOS secretary, Adrian Reames never assisted the CMS in drafting monthly congressional reports or drafted such reports alone prior to her promotion to the CMS job in August 2012. By contrast, between 2002 and 2011, Plaintiff assisted the CMS with drafting monthly congressional reports and drafted congressional monthly reports by himself on those occasions when the CMS was away from the EOS office.

121. As an EOS secretary, Adrian Reames rarely, if ever, assisted the CMS with any of the CMS's routine duties prior to obtaining the CMS job in August 2012. By contrast, Plaintiff assisted the CMS in her job responsibilities daily.

122. At the time Ms. Reames obtained the CMS job, she had never put data into the CTS and the ICM software systems, a critical component of the CMS job; whereas, Plaintiff had substantial experience over several years performing both responsibilities.  Adrian Reames never made recommendations to management as to how to improve the ICM or CTS tracking systems or assist other staff members in researching information on the ICM or

CTS system before she was promoted to the CMS job. By contrast, Plaintiff performed these tasks on numerous occasions between 2002 and 2012.

123. The CMS job announcement placed emphasis on formal education for the GS-9 position by seeking an applicant with a master's or equivalent graduate degree, or two full years of progressively higher-level graduate education leading to advance degrees.   However, Adrian Reames did not have a college degree when she obtained the CMS job.   By contrast, Plaintiff had an associates and college degree when he applied for the CMS job.

124. Prior to being hired as a secretary in the EOS, Adrian Reames had held secretarial and office jobs, except for one key-punch job briefly, after high school.

125. Prior to getting the CMS job, Adrian Reames had never worked as a paralegal or a records manager. By contrast, Plaintiff had worked as a records manager not only with EOS, but also with private firms for over 10 years before coming to work at the DOJ.

126. The CMS job announcement sought an applicant with experience with the relevant civil rights statutes within the core competencies of the EOS.  Prior to her hire by DOJ in 2007, none of Adrian Reames's prior jobs involved civil rights work.  Adrian Reames only began civil rights work when she started working as a secretary with the EOS in 2007.  By contrast, Plaintiff had worked in the EOS as a Legal Technician utilizing EOS civil rights statutes for his job for five years before Adrian Reames was hired.

127. After Adrian Reames' promotion to the CMS job, EOS managers assigned her to "oversee" Plaintiff's work performance and "make sure he is doing what he is supposed to be doing," such as assembling reports for staff attorneys or closing out cases.

128. Due to the shock of learning that he did not get the promotion to the CMS job, Plaintiff called the DOJ Employment Assistance Program (EAP) office that same day because he

felt he needed counseling due to his poor emotional state. However, he was unable to get a counselor that day.

129. Since Plaintiff was unable to meet with a DOJ EAP counselor after learning that he had been bypassed for the CMS job, he went home and remained home for approximately a week due to depression and anxiety.

130. After Plaintiff returned to work around August 15, 2012, he met with Karen Ramey at the DOJ EAP office to discuss his work-related emotional problems. At that meeting, Plaintiff expressed his frustration, anxiety, and depression about not getting the CMS job and she explained his options to him.

131. Plaintiff and Ms. Ramey discussed a transfer to another unit within the DOJ and he worked hard to draft and send her a copy of his resume.

132. Ms. Ramey reviewed his resume and provided him with helpful advice, which helped him manage his depression and anxiety.

133. After Adrian Reames was promoted to the CMS job, she had difficulty learning the responsibilities of the job, including learning the ICM and CTS computer systems, and EOS management frequently asked Plaintiff to train Adrian Reames on the CMS duties.

134. Plaintiff had to train Adrian Reames for over a year to perform many CMS duties in addition to performing his Legal Technician's job.

135. After Adrian Reames acquired the CMS job in October 2012, EOS management did not ask her to lift any records boxes, and Plaintiff has never seen her lift any records boxes.

136. Despite Plaintiff informing EOS management about an injury to Plaintiff's wrist and elbow, resulting from continuous lifting of EOS records boxes, management continued to

require Plaintiff to lift records boxes, without assistance, from October 2012 until

November 2017.

137. In or around mid-to-late August 2012, shortly after learning from Michelle Foushee-

McAdoo that he had been bypassed for the CMS job, Plaintiff sent a letter to Thomas

Perez, Assistant Attorney General for Civil Rights, and asked Mr. Perez if he could

transfer to another unit within the Civil Rights Division.

138. Plaintiff was not transferred, but his letter was referred to one of Mr. Perez's staffers who

told Plaintiff that he should file an EEO claim with the DOJ EEO to preserve his rights.

139. On November 1, 2012, Plaintiff filed a complaint with the DOJ EEO office against the

EOS alleging, *inter alia*, that he was discriminated against because of his gender and age

and that he had been retaliated against for engaging in protected activity.

140. DOJ EEO accepted Plaintiff's claim for investigation.

## CAUSES OF ACTION

## COUNT 1

## PROMOTION DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF 42

## U.S.C.§ 2000e

141. Plaintiff Thompson incorporates paragraphs 1 through 140 of this Complaint as if fully

set forth herein.

142. Under the provisions of 42 U.S.C. § 2000e, as amended, it is unlawful for an employer to

discriminate against an employee in promotion on the basis of the employee's sex.

143. Plaintiff Thompson is a 58-year-old male and was discriminated against by Defendant

DOJ in August 2012 when Defendant failed to promote him to the CMS position for

which he qualified; and instead, promoted a younger, lesser-qualified female employee,

Adrian Reames, to fill the position for which Plaintiff Thompson applied. *McDonnell Douglas v Green*, 411 U.S. 792, 802 (1973).

144. Defendant's stated reasons for selecting Adrian Reames instead of Plaintiff for the CMS are pretextual since Plaintiff's qualifications were demonstrably superior to the selectee's (*Bauer v. Bailar*, 647 F. 2d 1037, 1048 (10th Cir. 1981), and defendant deviated from standard DOJ promotion selection procedures when DOJ made its promotion decision. *Hurlbert  v. St. Mary's Health Care Sys.,* 439 F.3d 1286,1299 (11th Cir. 2006); *Jones v. Ottenberg's  Bakers, Inc.*, 999 F. Supp. 2d 185(D.D.C. 2013); *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1378 (2008); *Conner v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1374-75(N.D. Ga. 2008).

145. Therefore, Defendant's actions in unlawfully failing to promote Plaintiff Thompson constitute sex discrimination in violation of 42 U.S.C.§2000e et seq. *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000).

146. As a proximate result of Defendant's actions, as outlined above, Plaintiff Thompson has in the past, and will in the future, suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

147. Plaintiff Thompson, therefore, requests relief as set forth in more detail below.

## COUNT 2

## PROMOTION DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF 42 U.S.C.§ 2000e

148. Plaintiff Thompson incorporates paragraphs 1 through 147 of this Complaint as if fully set forth herein.

149. Under the provisions of 42 U.S.C. § 2000e, as amended, it is unlawful for an employer to discriminate against an employee in promotion on the basis of the employee's age.

150. Plaintiff Thompson is a 58-year-old male and was discriminated against by Defendant DOJ in 2012 when Defendant failed to promote him to the CMS position for which he qualified; and instead, promoted a younger, lesser-qualified female, Adrian Reames, to fill the position for which Plaintiff Thompson applied. *McDonnell Douglas v Green*, 411 U.S. 792, 802 (1973).

151. Defendant's stated reasons for selecting Adrian Reames instead of Plaintiff for the CMS position are pretextual since Plaintiff's qualifications were demonstrably superior to the selectee's (*Bauer v. Bailar*, 647 F. 2d 1037, 1048 (10th Cir. 1981)), and defendant deviated from standard DOJ promotion selection procedures when DOJ made its promotion decision. *Hurlbert v. St. Mary's Health Care Sys.,* 439 F.3d 1286,1299 (11th Cir. 2006); *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185(D.D.C. 2013); *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1378 (2008); *Conner v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1374-75(N.D. Ga. 2008).

152. Therefore, Defendant's actions in unlawfully failing to promote Plaintiff Thompson constitute age discrimination in violation of 42 U.S.C.§2000e et seq. *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000).

153. As a proximate result of Defendant's actions, as outlined above, Plaintiff Thompson has in the past, and will in the future, suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

154. Plaintiff Thompson, therefore, requests relief as set forth in more detail below.

**COUNT 3**

## RETALIATION IN VIOLATION OF 42 U.S.C.§ 2000e

155. Plaintiff Thompson incorporates paragraphs 1 through 154 of this Complaint as if fully set forth herein.

156. Under the provisions of 42 U.S.C. § 2000e, as amended, it is unlawful for an employer to retaliate against an employee for engaging in protected activity.

157. Plaintiff Thompson engaged in protected activity when he responded to interrogatories in March 2012 regarding a co-worker who had filed an employment discrimination complaint against the EOS.

158. Shortly after engaging in protected activity in March 2012 by responding to interrogatories regarding an EOS co-worker who had filed an employment discrimination complaint against EOS, Plaintiff Thompson was given a poor work performance evaluation in June 2012, and denied a promotion to the CMS job by the same EOS management officials who had been named as Defendants in the EOS co-worker employment discrimination lawsuit.

159. Therefore, Defendant's actions of giving Plaintiff a poor work performance evaluation and denying Plaintiff a promotion to the CMS job, constitute retaliation in violation of 42 U.S.C.§2000e et seq.

160. As a proximate result of Defendant's actions, as outlined above, Plaintiff Thompson has in the past, and will in the future, suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

161. Plaintiff Thompson, therefore, requests relief as set forth in more detail below.

## RELIEF

**WHEREFORE,** Plaintiff, Keith Thompson, respectfully prays that the Court enter an Order that:

A. Declares Defendant's conduct complained of herein to be in violation of the Plaintiff's rights under 42 U.S.C. § 2000e, as amended;

B. Permanently enjoins Defendant and its officers from engaging in conduct that violates 42 U.S.C. § 2000e;

C. Awards Plaintiff compensatory damages pursuant to 42 U.S.C.§2000e, as amended;

D. Awards Plaintiff the value of backpay and all compensation and benefits lost as a result of Defendant's unlawful conduct pursuant to 42 U.S.C.§2000e, as amended;

E. Awards Plaintiff punitive damages pursuant to 42 U.S.C.§2000e, as amended;

F. Awards Plaintiff front pay pursuant to 42 U.S.C. §2000e, as amended;

G. Awards reasonable attorney's fees, interest as provided by law, and the costs of this action pursuant to applicable Court deems equitable and just.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury of all issues herein.

Respectfully submitted,

By:

Larry Ward, Esq.
D.C. Bar No. 419105
P.O. Box 1137
2 Massachusetts Avenue, N.E.
Washington, D.C. 20002
301-325-2468
larryoflegacy@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of June, I served a copy of the foregoing

Complaint with Jury Demand on all counsel of record via the Court's CM/ECF system.

Larry Ward, Esq.
D.C. Bar No.  419105
P.O. Box 1137
2 Massachusetts Avenue, N.E.
Washington, D.C. 20002
301-325-2468
larryoflegacy@gmail.com